AO93 Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
for the
District of Arizona

| | |
|---|---|
| In the Matter of the Search of<br>One (1) Apple iPhone with Red Case | Case No. 21-   9115 MB |

### SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of Arizona:

**As further described in Attachment A-1.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal:

**As set forth in Attachment B-1.**

**YOU ARE COMMANDED** to execute this warrant on or before _____5/18/2021_____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m. ☒ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to <u>any United States Magistrate Judge on criminal duty in the District of Arizona.</u>

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized ☐ for _30_ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:   <u>5/4/2021 @ 2:50pm</u>          *Eswillett*
                                                                                      *Judge's signature*

City and state: <u>Phoenix, Arizona</u>          <u>Honorable Eileen S. Willett, United States Magistrate Judge</u>
                                                                              *Printed name and title*

## ATTACHMENT A-1

The property to be searched is described as one (1) Apple iPhone with red case (hereafter, "SUBJECT CELLULAR TELEPHONE 1"). SUBJECT CELLULAR TELEPHONE 1 is currently being stored at a DEA-affiliated facility in Phoenix, Arizona. The warrant authorizes the forensic examination of SUBJECT CELLULAR TELEPHONE 1 for the purpose of identifying the electronically stored information described in Attachment B-1.

## ATTACHMENT B-1

1.     Any records and information found within the digital contents of SUBJECT CELLULAR TELEPHONE 1 that relate to violations of 21 U.S.C. § 841 (Possession with Intent to Distribute a Controlled Substance) and 21 U.S.C. § 846 (Conspiracy to Possess with Intent to Distribute a Controlled Substance), including:

    a.  all information related to the sale, purchase, receipt, shipping, importation, transportation, transfer, possession, or use of drugs;

    b.  all information related to buyers or sources of drugs (including names, addresses, telephone numbers, locations, or any other identifying information);

    c.  all bank records, checks, credit card bills, account information, or other financial records;

    d.  all information regarding the receipt, transfer, possession, transportation, or use of drug proceeds;

    e.  any information recording schedule or travel;

    f.  evidence indicating SUBJECT CELLULAR TELEPHONE 1 user's state of mind as it relates to the crime under investigation;

    g.  contextual information necessary to understand the above evidence.

2.     Any records and information found within the digital contents of SUBJECT CELLULAR TELEPHONE 1 indicating the user and/or owner of SUBJECT CELLULAR TELEPHONE 1 at the time the things described in the warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books,

contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of SUBJECT CELLULAR TELEPHONE 1.

AO 106 Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### District of Arizona

| In the Matter of the Search of | | Case No. 21- 9115 MB |
| One (1) Apple iPhone with Red Case | | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

**As further described in Attachment A-1**

located in the District of Arizona, there is now concealed:

**As set forth in Attachment B-1**

The basis for the search under Fed. R. Crim. P. 41(c) is:

☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code/Section | Offense Description |
| --- | --- |
| 21 U.S.C. § 841 | Possession with Intent to Distribute a Controlled Substance |
| 21 U.S.C. § 846 | Conspiracy to Distribute a Controlled Substance |

The application is based on these facts:

**See attached Affidavit of Special Agent Timothy Wicks**

☒ Continued on the attached sheet.
☐ Delayed notice of _30_ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA William Bryan

WILLIAM BRYAN
Digitally signed by WILLIAM BRYAN
Date: 2021.05.04 13:40:26 -07'00'

Electronically signed and sworn to me telephonically

Date: 5/4/2021@2:50pm

City and state: Phoenix, Arizona

TIMOTHY WICKS
Digitally signed by TIMOTHY WICKS
Date: 2021.05.04 13:27:35 -07'00'

*Applicant's Signature*

Timothy Wicks, Special Agent, DEA
*Printed name and title*

*Judge's signature*

Honorable Eileen S. Willett, United States Magistrate Judge
*Printed name and title*

## **ATTACHMENT A-1**

The property to be searched is described as one (1) Apple iPhone with red case (hereafter, "SUBJECT CELLULAR TELEPHONE 1"). SUBJECT CELLULAR TELEPHONE 1 is currently being stored at a DEA-affiliated facility in Phoenix, Arizona. The warrant authorizes the forensic examination of SUBJECT CELLULAR TELEPHONE 1 for the purpose of identifying the electronically stored information described in Attachment B-1.

## ATTACHMENT B-1

1.     Any records and information found within the digital contents of SUBJECT CELLULAR TELEPHONE 1 that relate to violations of 21 U.S.C. § 841 (Possession with Intent to Distribute a Controlled Substance) and 21 U.S.C. § 846 (Conspiracy to Possess with Intent to Distribute a Controlled Substance), including:

    a.  all information related to the sale, purchase, receipt, shipping, importation, transportation, transfer, possession, or use of drugs;

    b.  all information related to buyers or sources of drugs (including names, addresses, telephone numbers, locations, or any other identifying information);

    c.  all bank records, checks, credit card bills, account information, or other financial records;

    d.  all information regarding the receipt, transfer, possession, transportation, or use of drug proceeds;

    e.  any information recording schedule or travel;

    f.  evidence indicating SUBJECT CELLULAR TELEPHONE 1 user's state of mind as it relates to the crime under investigation;

    g.  contextual information necessary to understand the above evidence.

2.     Any records and information found within the digital contents of SUBJECT CELLULAR TELEPHONE 1 indicating the user and/or owner of SUBJECT CELLULAR TELEPHONE 1 at the time the things described in the warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books,

contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of SUBJECT CELLULAR TELEPHONE 1.

## AFFIDAVIT IN SUPPORT OF
## APPLICATION FOR SEARCH WARRANT

I, Timothy Wicks, Special Agent of the United States Drug Enforcement Administration, Phoenix Division Office, being duly sworn, hereby depose and state:

### INTRODUCTION AND AGENT BACKGROUND

1.      Your Affiant makes this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to examine the cellular telephones described as (a) one (1) Apple iPhone with red case, further described in Attachment A-1 (hereafter, "SUBJECT CELLULAR TELEPHONE 1"), and (b) one (1) Apple iPhone with clear plastic case, further described in Attachment A-2 (hereafter, "SUBJECT CELLULAR TELEPHONE 2"), in order to extract the electronically stored information set forth in Attachments B-1 and B-2, respectively, which represent evidence and/or instrumentalities of the criminal violations further described below. SUBJECT CELLULAR TELEPHONE 1 and SUBJECT CELLULAR TELEPHONE 2 will be hereinafter referred to collectively as the "SUBJECT CELLULAR TELEPHONES".

2.      Your Affiant is a Special Agent (SA) of the United Stated Drug Enforcement Administration (DEA), and as such am an investigator or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations and make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

3.     Your Affiant has been employed as a Special Agent with DEA since December 2009. Prior to becoming a Special Agent, Your Affiant attended the DEA nineteen week training academy located in Quantico, Virginia.  While at the DEA training academy, Your Affiant received formal training in investigative techniques, drug identification, and the laws pertaining to drug investigations. Your Affiant has received on-the-job training from supervisors, other agents and detectives regarding the illegal trafficking of controlled substances. Your Affiant is currently assigned to Strike Force Group 1 (SF1) of the Phoenix DEA Divisional Office.

4.     By virtue of his employment as a Special Agent, Your Affiant has performed various tasks, which include, but are not limited to:  functioning as a surveillance agent, thus observing and recording movements of persons trafficking in drugs and those suspected of trafficking in drugs; interviewing confidential sources (CSs) and sources of information (SOIs) relative to the illegal trafficking of drugs and the distribution of monies and assets derived from the illegal trafficking of drugs (laundering of monetary instruments); and  participating, including as a case agent, in investigations entailing the supervision of specific investigations involving the trafficking of drugs and the laundering of monetary instruments, including interception of wire communications.

5.     Your Affiant is familiar with the manner in which drug traffickers and money launderers conduct their business, including, but not limited to, their methods of importing and distributing controlled substances, and their use of cellular telephones. Your Affiant is familiar with the ways traffickers of controlled substances and others receive, collect, conceal, and launder the proceeds of their illegal trafficking activities,

2

including proceeds derived from the sale and distribution of controlled substances.

6.      While conducting drug investigations, Your Affiant has consulted with other experienced investigators concerning the practices of drug-traffickers and the best methods of investigating them. In preparing this Affidavit, Your Affiant has conferred with other law enforcement officers involved in this investigation. Furthermore, Your Affiant has personal knowledge of the following facts or has learned them from the individuals mentioned herein.

7.      The statements contained in this Affidavit are based on information derived from your Affiant's personal knowledge, training and experience; information obtained from the knowledge and observations of other sworn law enforcement officers, either directly or indirectly through their reports or affidavits and information learned through the execution of search warrants.

8.      Because this Affidavit is being submitted for the limited purpose of securing warrants to search the SUBJECT CELLULAR TELEPHONES, respectively, your Affiant has set forth only the facts which your Affiant believes are necessary to establish probable cause to search the SUBJECT CELLULAR TELEPHONES, respectively.

## PROBABLE CAUSE

9.      In the summer of 2020, members of DEA Columbus, Ohio, along with the United States Postal Service (USPS) – Office of the Inspector General (OIG) in Columbus, Ohio, initiated a joint investigation into a drug trafficking organization (DTO) that was using the USPS to smuggle drugs into the Southern District of Ohio (SDOH).

USPS-OIG agents uncovered an extensive history of suspicious packages mailed to various addresses and recipients in the Columbus, Ohio metropolitan area from drug source states, to include Arizona. Columbus investigators also learned that the DTO was using outbound packages to return proceeds from the sale of the drugs back to sources of supply.

10.     As part of their investigation, DEA and USPS-OIG in Columbus, Ohio, investigators identified Abel CHAGO (CHAGO) in Phoenix as a suspected associate and source of supply for a target of their investigation. Law enforcement officers in Columbus, Ohio identified multiple addresses in the Columbus, Ohio metropolitan area associated with targets of their investigation, as well as an address in the Phoenix metropolitan area that was associated with sending packages to and receiving packages from these addresses in the Columbus metropolitan area. In addition, Columbus investigators learned that CHAGO was associated with a residence located on North 40th Drive in Phoenix, Arizona (hereafter, "the 40th Drive Address").

11.     On April 15, 2021, a federal grand jury convened in the Southern District of Ohio and indicted CHAGO on charges of conspiracy to distribute and possession with intent to distribute methamphetamine and fentanyl, respectively, in violation of 21 U.S.C. §§ 846 and 841, respectively.

12.     On April 16, 2021, your Affiant obtained federal warrants authorizing the search of: (1) the 40th Drive Address (believed to be CHAGO's primary residence); (2) a white Mercedes Benz SUV (hereafter, the "White Mercedes"); (3) a white Chevrolet

4

Spark (hereafter, the "White Spark")[1]; and (4) Apartment #1028 of an apartment complex located on North 44th Street, in Phoenix, Arizona (hereafter, "Apartment #1028"), an apartment believed to be rented by CHAGO.

13.    On April 20, 2021, law enforcement officers executed the search warrants at the 40th Drive Address and Apartment #1028, as well as on the White Mercedes and the White Spark. At the time law enforcement officers executed the search warrant at the 40th Drive Address, CHAGO was present and taken into custody. Both the White Mercedes and the White Spark were also parked in the driveway area of the 40th Drive Address.

14.    During a subsequent search of the 40th Drive Address, investigators located one (1) Apple iPhone with a red case (SUBJECT CELLULAR TELEPHONE 1) and one (1) Apple iPhone with a clear plastic case (SUBJECT CELLULAR TELEPHONE 2) in the master bedroom of the 40th Drive Address. CHAGO informed law enforcement officers that the SUBJECT CELLULAR TELEPHONES belonged to him (CHAGO). In addition, investigators located a Ruger AR-556 AR-15 style rifle in a locked gun case underneath the bed in the master bedroom.

15.    During a search of the White Mercedes, investigators located a Springfield Armory handgun mounted to the dash of the White Mercedes underneath the steering wheel, as well as three black plastic containers with clear plastic lids that contained suspected methamphetamine within a backpack on the backseat of the White Mercedes.

---

[1]Both the White Mercedes and the White Spark are registered to CHAGO at the 40th Drive Address.

Law enforcement officers conducted a field test of the contents of one of the black plastic containers, which test indicated presumptive positive for the presence of methamphetamine. The aggregate total gross weight of the three containers with suspected methamphetamine was approximately 1.51 kilograms.

16.     During a subsequent search of Apartment #1028, within the closet of one of the rooms of Apartment #1028, investigators located eighteen (18) black plastic containers with clear plastic lids that contained suspected methamphetamine, as well as a clear plastic bag that also contained suspected methamphetamine. Law enforcement officers conducted a field test of the contents of one of the black plastic containers, which test indicated presumptive positive for the presence of methamphetamine. The aggregate total gross weight of the eighteen (18) black plastic containers with clear plastic lids containing suspected methamphetamine and the clear plastic bag containing suspected methamphetamine was approximately 10.54 kilograms. Investigators noted that the black plastic containers with clear plastic lids were similar in appearance to the black plastic containers with clear plastic lids that law enforcement officers discovered within the White Mercedes on that same date.

17.     Investigators also discovered a hard, white substance shaped like a brick (believed to be fentanyl) in the closet of the same room in Apartment #1028 where law enforcement officers discovered the suspected methamphetamine. Law enforcement officers conducted a field test of the hard, white substance, which test indicated presumptive positive for the presence of fentanyl. The gross weight of the hard, white brick of suspected fentanyl was approximately 1.13 kilograms.

18.     In addition, investigators located two small square packages, also believed to contain fentanyl, within Apartment #1028. Law enforcement officers conducted a field test of the contents of one of the small square packages, which test indicated presumptive positive for the presence of fentanyl. The aggregate gross weight of the two small square packages was approximately 80 grams. Investigators also discovered two small plastic baggies containing suspected methamphetamine within Apartment #1028. Law enforcement officers conducted a field test of the contents of one of the small plastic baggies, which test indicated presumptive positive for the presence of methamphetamine. The aggregate gross weight of the two small plastic baggies was approximately 33 grams.

19.     Law enforcement officers have maintained the SUBJECT CELLULAR TELEPHONES in law enforcement custody since the date of its seizure, and the SUBJECT CELLULAR TELEPHONES are currently being stored at a DEA affiliated facility in Phoenix, Arizona. In my training and experience, your Affiant knows that the SUBJECT CELLULAR TELEPHONES have been stored in a manner in which the contents are, to the extent material to this investigation, in substantially the same state as they were when the SUBJECT CELLULAR TELEPHONES first came into the possession of law enforcement.

## ITEMS TO BE SEIZED

20.     Based upon the facts contained in this Affidavit, Your Affiant submits there is probable cause to believe that the items listed in Attachments B-1 and B-2, respectively, will be found in the contents of SUBJECT CELLULAR TELEPHONE 1 and SUBJECT CELLULAR TELEPHONE 2, respectively.

7

21.     Based on my training and experience, and discussions with other trained law enforcement personnel, Your Affiant knows the following:

a.      Drug traffickers commonly use cellular telephones to communicate with other drug traffickers and customers about drug-related activities through the use of telephone calls, text messages, email, chat rooms, social media, and other internet- and application-based communication forums. Moreover, drug traffickers commonly use other capabilities of cellular telephones to further their drug trafficking and money laundering activities. Therefore, evidence related to drug trafficking activity and/or money laundering activity is likely to be found on the SUBJECT CELLULAR TELEPHONES; and

b.      Certain types of cellular telephones referred to as "smartphones" (such as the SUBJECT CELLULAR TELEPHONES) generally offer more advanced computing ability and internet connectivity than standard cellular telephones. Provided that internet access has been obtained through an electronic communication service provider for a particular smartphone, a smartphone is capable of running complete operating system software, has full access to the internet and/or electronic mail (including file attachments), is capable of text and instant messaging, can create and edit documents created with computer software, is capable of storing large amounts of data, and can be interfaced with desktop and laptop computers.

22.     As described in Attachment B-1 and B-2 hereto, respectively, this Affidavit seeks permission to locate not only data files that might serve as direct evidence of the crimes described in the warrant, but also for evidence that establishes which individual(s)

8

used SUBJECT CELLULAR TELEPHONE 1 and SUBJECT CELLULAR TELEPHONE 2, respectively, as well as the purpose of the use of SUBJECT CELLULAR TELEPHONE 1 and SUBJECT CELLULAR TELEPHONE 2, respectively. Additionally, this Affidavit seeks information regarding the possible location of other evidence.

23.    As described in Attachment B-1 and B-2 hereto, respectively, this Affidavit also seeks permission to search and seize certain electronic records that might be stored within SUBJECT CELLULAR TELEPHONE 1 and SUBJECT CELLULAR TELEPHONE 2, respectively. Some of these electronic records might take the form of files, documents, or other data that are user generated. Some of these electronic records, as explained below, might take a form that becomes meaningful only upon forensic analysis.

24.    Although some of the records requested in this Affidavit might be found in the form of user-generated documents (such as electronic format documents and photograph and movie files), electronic communication devices (such as the SUBJECT CELLULAR TELEPHONES) can contain other forms of electronic evidence that are not user-generated. In electronic communication devices may contain records of how the device has been used and/or the person(s) who utilized the electronic communication device.

**DIGITAL EVIDENCE STORED WITHIN A CELLULAR TELEPHONE**

25.    As described in Attachments B-1 and B-2, respectively, this application seeks permission to search for records and information that might be found in the

9

contents of SUBJECT CELLULAR TELEPHONE 1 and SUBJECT CELLULAR TELEPHONE 2, respectively. Thus, the warrant applied for would authorize the copying of electronically stored information under Rule 41(e)(2)(B).

26.     Your Affiant submits that there is probable cause to believe records and information relevant to the criminal violations set forth in this Affidavit will be stored on the SUBJECT CELLULAR TELEPHONES for at least the following reasons:

a.      Your Affiant knows that when an individual uses a cellular telephone, the cellular telephone may serve both as an instrumentality for committing the crime and also as a storage medium for evidence of the crime. The cellular telephone is an instrumentality of the crime because it is used as a means of committing the criminal offense. The cellular telephone is also likely to be a storage medium for evidence of the crime. Based on my knowledge, training, and experience, your Affiant believes that a cellular telephone used to commit a crime of this type may contain: data that is evidence of how the cellular telephone was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

b.      Based on my knowledge, training, and experience, your Affiant knows that cellular telephones contain electronically stored data, including, but not limited to, records related to communications made to or from the cellular telephone, such as the associated telephone numbers or account identifiers, the dates and times of the communications, and the content of stored text messages, e-mails, and other communications; names and telephone numbers stored in electronic "address books;"

10

photographs, videos, and audio files; stored dates, appointments, and other information on personal calendars; notes, documents, or text files; information that has been accessed and downloaded from the Internet; and global positioning system ("GPS") information.

c.     Based on my knowledge, training, and experience, your Affiant knows that electronic files or remnants of such files can be recovered long after they have been downloaded onto a cellular telephone, deleted, or viewed via the Internet. Electronic files downloaded to a cellular telephone can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a cellular telephone, the data contained in the file does not actually disappear; rather, that data remains on the cellular telephone until it is overwritten by new data.

d.     Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the cellular telephone that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a cellular telephone's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

27.     As further described in Attachments B-1 and B-2, respectively, this application seeks permission to locate not only electronic files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how the cellular telephone was used, the purpose of the use, who used it, and when. There is probable cause to believe that this forensic electronic evidence will be found in the contents of the SUBJECT CELLULAR TELEPHONES because:

a.     Data in a cellular telephone can provide evidence of a file that was once in the contents of the cellular telephone but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.     As explained herein, information stored within a cellular telephone may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, information stored within cellular telephones (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the cellular telephone.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the cellular telephone was remotely accessed, thus inculpating or exculpating the owner.  Further, activity on a cellular telephone can indicate how and when the cellular telephone was accessed or used.  For example, as described herein, cellular telephones can contain information that log: session times and durations, activity associated with user accounts, electronic storage media that connected with the cellular telephone, and the IP addresses through which the cellular telephone accessed networks and the internet.  Such information allows investigators to understand the chronological context of cellular telephone access, use,

and events relating to the crime under investigation.  Additionally, some information stored within a cellular telephone may provide crucial evidence relating to the physical location of other evidence and the suspect.  For example, images stored on a cellular telephone may both show a particular location and have geolocation information incorporated into its file data.  Such file data typically also contains information indicating when the file or image was created.  The geographic and timeline information described herein may either inculpate or exculpate the user of the cellular telephone. Last, information stored within a cellular telephone may provide relevant insight into the user's state of mind as it relates to the offense under investigation.  For example, information within a computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c.      A person with appropriate familiarity with how a cellular telephone works can, after examining this forensic evidence in its proper context, draw conclusions about how the cellular telephone was used, the purpose of its use, who used it, and when.

d.      The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a cellular telephone that are necessary to draw an accurate conclusion is a dynamic process.  While it is possible to specify in advance the records to be sought, cellular telephone evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on one cellular telephone is evidence may depend on other information stored on

13

that or other storage media and the application of knowledge about how electronic storage media behave.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

28.    Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant your Affiant is applying for would permit imaging or otherwise copying the contents of the SUBJECT CELLULAR TELEPHONES, including the use of computer-assisted scans.

29.    Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

30.    Your Affiant submits there is probable cause to believe that the items listed in Attachment B-1 and B-2, respectively, which constitute evidence and/or instrumentalities of violations of 21 U.S.C. §§ 841 and 21 U.S.C. §§ 846 (Possession With Intent to Distribute and Conspiracy to Possess with Intent to Distribute a Controlled Substance, respectively) are likely to be found in the contents of SUBJECT CELLULAR

//

//

//

TELEPHONE 1 and SUBJECT CELLULAR TELEPHONE 2, which are further described in Attachments A-1 and A-2, respectively.

TIMOTHY WICKS

Digitally signed by
TIMOTHY WICKS
Date: 2021.05.04 13:29:02
-07'00'

Special Agent Timothy Wicks
Drug Enforcement Administration

Telephonically sworn and subscribed this _____4th_____ day of May, 2021.

HONORABLE EILEEN S. WILLETT
UNITED STATES MAGISTRATE JUDGE

15